# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 21-7027                                          September Term, 2021

FILED ON: JANUARY 21, 2022

ZURICH AMERICAN INSURANCE COMPANY,
        APPELLEE

v.

UIP COMPANIES LLC; STEVEN F. SCHWAT; PETER J. BONNELL; STEPHEN E. COX; SCHWAT REALTY LLC,
        APPELLANTS

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-01818)

Before: SRINIVASAN, *Chief Judge*, RAO, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

### JUDGMENT

The Court considered this appeal on the record and the briefs and oral argument of the parties. The panel has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is hereby

**ORDERED AND ADJUDGED** that the decision of the district court be **AFFIRMED**.

### I.

Appellant UIP Companies LLC is a real estate investment asset and property management company specializing in multi-family properties in the Washington, D.C. metropolitan area. After Wout Coster, a UIP partner, passed away in April 2015, his wife Marion Coster inherited his 50% equity interest in the UIP companies and his entitlement to certain "promotes," or shares, of the business. Marion Coster began discussions with UIP management to obtain compensation for her ownership interests in the company.

Negotiations turned sour when Coster began to suspect that UIP had been operating as though Wout had relinquished some of his ownership in the company before his death. In August 2017 and again in October 2017, Coster's attorney alleged that she had not received the profit

distributions owed to her since her husband's passing and had not been consulted about significant operational matters.

On February 15, 2018, Coster's attorney sent an email to UIP's counsel setting forth the "terms under which Mrs. Coster . . . is willing to enter a global resolution of the current situation involving the UIP Companies and [UIP principals Steven Schwat, Peter Bonnell, and Heath Wilkinson]." J.A. 385–86.  The email set forth two frameworks under which Coster offered to sell her equity interests in UIP and receive compensation for past distributions she believed she was owed.  UIP's counsel rejected Coster's proposal.  Coster's attorney responded that Coster intended to assert her rights as a 50% stakeholder and would not hand over her ownership "for zero consideration." J.A. 395.

In the summer of 2018, Coster filed three lawsuits against UIP and its principals.  Two were filed in the Delaware Chancery Court, and the third in the United States District Court for the District of Columbia.  Coster's consolidated Delaware actions center on allegations that the defendants diluted UIP stock so as to deprive her of voting power.  *See Coster v. UIP Companies, Inc.*, 255 A.3d 952, 954 (Del. 2021).  Those actions are ongoing.  In the federal-court action, Coster alleges that UIP "engaged in a brazen and unlawful scheme to deny Mrs. Coster, an elderly widow, any financial remuneration" from her ownership interests in UIP.  *See Coster v. Schwat*, 502 F. Supp. 3d 260, 261 (D.D.C. 2020) (citations and alterations omitted).  That lawsuit also remains pending.

On March 8, 2019, nearly nine months after Coster filed her first lawsuit against UIP and nearly seven months after Coster filed her third lawsuit, UIP provided notice of Coster's lawsuits to its liability insurer, Zurich American Insurance Company.  UIP sought coverage for the costs and damages associated with Coster's lawsuits.  UIP's coverage request implicated two policies: the first provided coverage to UIP from March 1, 2017, to March 1, 2018 (the 2017 Policy) and the second provided coverage from March 1, 2018, to March 1, 2019 (the 2018 Policy).  Both policies confine coverage to claims made during the policy period, and both policies expressly make timely notice of a claim a condition precedent to coverage.  In that regard, notice of a claim made against the insured must be provided as soon as practicable after the insured first learns of the claim, but in no event later than ninety days after expiration of the relevant policy period (or an extended reporting period, if applicable).

After receiving additional information from UIP, Zurich denied the requested coverage in its entirety.  Zurich grounded its denial on UIP's failure to provide timely notice of Coster's lawsuits.  Zurich then filed suit in the district court, seeking a declaration that it is not obligated to provide insurance coverage to UIP in connection with Coster's three lawsuits.  The district court granted summary judgment to Zurich, agreeing with Zurich that UIP had failed to provide timely notice of the claims.  UIP now appeals.

## II.

We agree with the district court that UIP failed to provide timely notice under either its 2017 or 2018 Policies. We therefore affirm the district court's grant of summary judgment to Zurich.

We begin with the 2017 Policy. The question of coverage under that policy turns on whether the February 15, 2018, email from Coster's counsel to UIP—received during the 2017 policy period—qualified as a claim triggering the requirement to provide notice. Under the 2017 Policy, all claims made during the policy period had to be reported to Zurich by May 30, 2018. UIP, however, does not dispute that it failed to provide notice of Coster's lawsuits until March 8, 2019. And UIP does not challenge the district court's finding that the February 15, 2018, email and Coster's lawsuits are sufficiently related such that they pertain to a single claim. Consequently, if the email qualified as a claim triggering the notice requirement, Zurich permissibly declined coverage of the matter on the basis that UIP failed to provide timely notice.

We agree with the district court that the February 15, 2018, email qualified as a claim under the terms of the Zurich policies. The Zurich policies define a claim as "a written demand against any Insured for monetary damages or non-monetary or injunctive relief commenced by the Insured's receipt of such demand . . . ." J.A. 809, 822, 1001. The email conveyed such a demand.

The email proposed two frameworks under which Coster offered to settle her claims. Under Framework A, among other demands, "Mrs. Coster would agree to receive 39% of total payouts on deals documented on Appendix A to the term sheet that was signed by the parties on 4/11/14 but never consummated . . . ." J.A. 385. Framework B proposed that "Mrs. Coster [] receive \$300,000 [sic] within one year as compensation for lost dividends/distributions/management involvement with regard to the UIP Companies since Mr. Coster's death." J.A. 386. Both of those requests anticipated compensation for past payments owed to Coster. The email therefore included a demand for money damages. *See Damages*, Black's Law Dictionary (11th ed. 2019) (defining "damages" as "[m]oney claimed by . . . a person as compensation for loss or injury").

Additionally, the email stated that Coster was "willing to enter a global resolution of claims for past events and to relinquish her equity interests in the three UIP Companies." J.A. 385. The reference to "global resolution of claims for past events," as the district court found, pertained to the proper compensation for UIP's past failure to recognize and compensate Coster commensurate with her purported ownership interests.

Nor is an express threat of litigation required for a communication to qualify as a "claim." While UIP suggests otherwise, it identifies no decision concluding that a communication containing a demand for money nonetheless failed to constitute a claim due to the absence of an express litigation threat. In any event, the context of the February 15, 2018, email—including its subject, "Inadmissible Settlement Communication," along with UIP's responsive communication stating that the parties could not reach "any amicable agreement if it is to be based on the valuations

[Coster] provided"—demonstrates that both parties fully contemplated the possibility of legal action. J.A. 385, 389.

UIP seeks to characterize the email as a demand for restitution rather than for monetary damages. UIP failed to raise that argument before the district court and thus has forfeited it. UIP's argument would fail in any event. Under the terms of the policies, Zurich expressly excludes coverage for claims seeking restitution—i.e., claims "based upon, arising out of or attributable to such Insured Person gaining any profit, remuneration or financial advantage to which such Insured was not legally entitled." J.A. 825, 1004. There would have been no need to exclude such claims from ultimate coverage if they did not fit within the definition of a claim in the first place. Accordingly, the decisions on which UIP relies concern whether a claim is ultimately covered under an insurance policy, not whether a demand must be reported as a claim in the first instance. *See CNL Hotels & Resorts, Inc. v. Twin City Fire Ins. Co.*, 291 F. App'x 220, 223 (11th Cir. 2008); *In re TransTexas Gas Corp.*, 597 F.3d 298, 301, 309 (5th Cir. 2010).

In short, because the February 15, 2018, email constituted a claim, we find that UIP failed to provide timely notice of the claim under the 2017 Policy and that Zurich permissibly denied coverage on that basis.

Zurich also prevails for a separate, independent reason: even assuming the February 15, 2018, email did not amount to a claim for purposes of triggering notice obligations under the 2017 Policy, UIP still failed to provide timely notice of Coster's lawsuits under the 2018 Policy. Both policies require giving notice of claims "as soon as practicable." J.A. 816, 995. Coster filed all three lawsuits in the summer of 2018, during the 2018 policy period. UIP, though, failed to provide Zurich notice of any of the lawsuits until March 2019, an approximately seven-to-nine month delay.

We find no error in the district court's conclusion that, as a matter of law, UIP failed to give notice as soon as practicable. Under District of Columbia law, which the parties agreed to apply in the district court, the reasonableness of a delay is a question of law when "reasonable persons can draw but one inference and that inference points 'unerringly' to the conclusion that the insured has not acted reasonably under the circumstances." *Greycoat Hanover F St. Ltd. P'ship v. Liberty Mut. Ins. Co.*, 657 A.2d 764, 768 (D.C. 1995) (citation omitted). Courts in the District of Columbia analyze three factors to determine whether a delay in notice is reasonable. *See Starks v. N. E. Ins. Co.*, 408 A.2d 980, 983 (D.C. 1979). All three factors weigh in favor of finding an unreasonable delay in this case. (It bears noting that, under District of Columbia law, an insurer can enforce a notice requirement without having to show prejudice. *See Wash. Sports & Ent., Inc. v. United Coastal Ins. Co.*, 7 F. Supp. 2d 1, 12 (D.D.C. 1998); *Greenway v. Selected Risks Ins. Co.*, 307 A.2d 753, 756 (D.C. 1973).)

The first factor concerns whether the insured reasonably should have believed the relevant event to be a reportable occurrence. *See Diamond Serv. Co. v. Utica Mut. Ins. Co.*, 476 A.2d 648, 653 (D.C. 1984). We agree with the district court that no reasonable insured could plead ignorance of a reportable event under the policies in this case after having been served with three lawsuits.

4

The second factor assesses what the insured reasonably could have believed about the seriousness of the injury and its liability for it.  *See id.*  Here, the lawsuits plainly posed a sufficient liability risk for purposes of alerting UIP of the need to report them to Zurich:  Coster sought compensatory damages, and by the time UIP provided notice, it had incurred over $640,000 in defense costs.  The third factor considers what the insured reasonably could have believed about the likelihood of a claim being made.  *See id.*  Here, the filing of the suits transformed any likelihood of a claim into a certainty, yet UIP still waited several months to supply notice.

UIP asserts that its principals remained unaware that the Zurich policies covered the suits until months after they were filed.  But the rule in the District of Columbia is that "[a]n insured is held to know the contents of his policy."  *Id.* at 653 n.8.  UIP further notes that it gave notice prior to the expiration of the 2018 policy period.  But UIP agreed to give notice as soon as practicable *and* prior to the expiration of the reporting period.  It failed to satisfy the former obligation, which serves to promote the insurer's ability to investigate claims as they arise and to participate in negotiations with third parties asserting claims against the insured.  *See Prodigy Commc'ns Corp. v. Agric. Excess & Surplus Ins. Co.*, 288 S.W.3d 374, 380 (Tex. 2009).  Because UIP failed to provide notice of Coster's lawsuits as soon as practicable, we agree with the district court that Zurich was not required to provide coverage under the 2018 Policy.

Pursuant to D.C. Cir. R. 36(d), this disposition will not be published.  The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc.  *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**<u>Per Curiam</u>**

FOR THE COURT:
Mark J. Langer, Clerk

BY:   /s/
Daniel J. Reidy
Deputy Clerk